```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

------------------------------x
MILAN CAIS,                   :
                              :
            Plaintiff,        :
                              :
v.                            :    Civil No. 3:09cv1511 (AWT)
                              :
TOWN OF EAST HADDAM,          :
DONALD ANGERSOLA AND          :
KEITH DARIN,                  :
                              :
            Defendants.       :
------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Milan Cais ("Cais"), brings this action against the Town of East Haddam, Donald Angersola ("Angersola") and Keith Darin ("Darin") for deprivation of his property in violation of his rights to procedural and substantive due process of law pursuant to 42 U.S.C. § 1983. Defendants Town of East Haddam and Angersola have moved for summary judgment.[1]  For the reasons set forth below, their motion is being granted.

I.  **FACTUAL BACKGROUND**

Angersola has been the Fire Chief of the East Haddam Fire Department in East Haddam, Connecticut since 2000.  On the night of January 1, 2008, at approximately 7:21 pm,

---

[1]The plaintiff has withdrawn all claims against Darin. Therefore, defendant Darin's separate motion for summary judgement has been granted.

1

Angersola was at home when his pager went off alerting him to a fire at 27 Powerhouse Road in East Haddam, the plaintiff's property.  When Angersola arrived at the scene of the fire, he could not see the primary structure from the street, but he could see the glow from the fire, which had "fully involved" the structure.  Angersola attempted to walk a full circle around the property to identify areas of access for fire suppression personnel and vehicles, but he was unable to complete the circle because debris, overgrown trees and vegetation obstructed his path.  He was able to observe, however, that on each floor of the structure fire was coming out of the windows.  This led Angersola to believe that the fire had fully involved the structure and caused substantial damage.

After other fire companies arrived on the scene, Angersola assumed control of the operation and set up access points.  The firefighters were unable to gain direct access to the structure because a six-foot chain link fence and a large amount of debris in the yard obstructed their path.  After an hour of attempting to gain access, Angersola called for the Town of East Haddam to send a road crew member to clear a path to the structure.  Approximately forty-five minutes later, a front-end loader driven by Ralph Nichols ("Nichols") arrived on the scene.  Angersola directed

Nichols to clear an area so that the fire trucks and crews could gain access to the structure. Once a large enough path was cleared, the firefighters were able to combat the fire. After six or seven hours, Angersola observed that all of the floors and the roof of the structure had collapsed and were burning in the basement of the structure.

At some point during the course of the night, the plaintiff approached Angersola and asked who he was. Angersola informed the plaintiff of his identity, and the plaintiff told him that he had no right to be on his property and asked that Angersola leave immediately. Angersola did not leave and continued combating the fire. Shortly after their conversation, Angersola observed the plaintiff receiving treatment from emergency medical personnel. Angersola never spoke to or saw the plaintiff again that night.

Around 5:00 or 6:00 am on January 2, 2008, Angersola ordered most of the firefighters on the scene to go home so that they could change and eat. One engine and five firefighters remained on the scene actively combating the fire until the others returned around 7:00 am. While most of the firefighters were gone, an excavator owned by Jim Carlson ("Carlson") arrived on the scene to clear a second path through the debris so that the firefighters could get

close enough to fight the fire that continued to burn in the basement. The smoke rising from the basement was affecting adjoining property owners, and although the fire hoses reached the structure, the exterior walls blocked attempts to put out the fire inside.

At this time, the exterior walls were no longer supported because all of the floors and the roof had collapsed into the basement. Angersola believed that the walls posed a risk of collapsing, and because of the risk of collapse, he refused to send any firefighters into the structure. At this point, Angersola made the decision that the exterior walls needed to be torn down as soon as possible. He believed such an action was necessary to combat the fire that was still burning and keep it from spreading to neighboring properties via the debris in the yard. Though two paths had been cleared, a large amount of debris remained on the property, and a neighbor had already reported a fire on the property line which had traveled through the debris.

Around 6:00 or 7:00 am on January 2, 2008, Angersola instructed Carlson to tear down the exterior walls with the excavator. In making the decision to tear down the walls, Angersola did not consult with anyone else, including the plaintiff. At the time, Angersola did not know the

whereabouts of the plaintiff and had not spoken with or seen him in approximately nine hours. After the walls were torn down, the firefighters were able to extinguish the fire in the basement.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. Of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.

Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Western

6

World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

**III. DISCUSSION**

The plaintiff claims that by tearing down the exterior walls of the structure without affording him any form of hearing beforehand, the defendants deprived him of his property without due process of law in violation of the Fourteenth Amendment.

**A. Claims Against Angersola**

**1. Procedural Due Process**

"The Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law. . . .' Due process requires that before state actors deprive a person of her property, they offer her a meaningful opportunity to be heard." WWBITV, Inc. v. Vill. of Rouses Point, 589 F.3d 46, 50 (2d Cir. 2009) (internal citations omitted). "The Supreme Court has held, however, that in emergency situations a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess

the propriety of the State's action at some time after the initial taking.'" Id. (quoting Parratt v. Taylor, 451 U.S. 527, 539 (1981)). "Where there is an emergency requiring quick action and where meaningful pre-deprivation process would be impractical, the government is relieved of its usual obligation to provide a hearing, as long as there is an adequate procedure in place to assess the propriety of the deprivation afterwards." WWBITV, 589 F.3d at 50 (internal citation omitted).

For the purposes of their motion for summary judgment, the defendants concede that the plaintiff had a constitutionally-protected property interest in the structure located at 27 Powerhouse Road. Thus, the court must determine whether there was an emergency, thereby relieving the defendants of their obligation to provide a pre-deprivation hearing, and whether adequate post-deprivation remedies were available.

### a. Existence of an Emergency Situation

In determining whether an official properly invoked emergency procedures, the court must "accord the decision to invoke the procedure some deference and not engage in a hindsight analysis of whether [the situation] actually created an immediate danger to the public." Catanzaro v. Weiden, 188 F.3d 56, 62 (2d Cir. 1998). "Such hindsight

8

analysis of [an official's] means of dealing with an emergency would encourage delay and risk increasing the public's exposure to dangerous conditions." WWBITV, 589 F.3d at 52. "If an official believes that the public is in immediate danger, he or she should not hesitate to invoke an emergency procedure for fear of being sued and being liable for damages should his or her decision turn out to be incorrect in hindsight." Catanzaro, 188 F.3d at 63.

"[T]he due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." Id. at 62. "Whether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion." WWBITV, 589 F.3d at 51.

In Burtnieks v. City of New York, 716 F.2d 982 (2d Cir. 1983), the plaintiff owned a vacant apartment building that had begun to crack and buckle. The city determined that the building was a safety hazard and, without holding a pre-demolition hearing, ordered that it be demolished. The plaintiff hired an architect who reported that demolition

was not necessary, and the plaintiff presented those findings to the city. However, the city refused to call off the demolition and the building was demolished approximately three months later.

The plaintiff sued for deprivation of her property without due process of law based on the failure to provide her with a pre-deprivation hearing. The Second Circuit reversed the trial court's grant of summary judgment in favor of the city, finding that there was a genuine issue as to whether an emergency existed, particularly in light of the three-month delay between the declaration of an emergency and the demolition of the building. The court held that for emergency procedures to be properly invoked, "a court must. . . find the necessity of quick action or the impracticality of providing any predeprivation process." Id. at 988.

In Catanzaro, two adjacent buildings owned by the plaintiff were damaged when a car crashed into one of the buildings, knocking down its support beams and causing it to buckle. 188 F.3d at 58. Due to the building's proximity to a street that provided access to a hospital and firehouse, the city immediately tore it down without a hearing. The following day, the city determined that Catanzaro's other building was unstable and needed to either be repaired or

10

torn down immediately as well.  When the plaintiff claimed that he could not afford the repairs, the city tore it down immediately, again without a hearing.

The plaintiff sued for violation of his procedural due process rights because he was denied an opportunity to contest the city's determination that the buildings were a threat to public safety.  The court found that no reasonable trier of fact could find that the city officials acted arbitrarily or abused their discretion in concluding that there was an emergency.  "[W]here there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist  . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion."  Id. at 63.

Here, as in Catanzaro, the material facts as to which there is no genuine dispute establish that the threat to the public was ongoing and there was insufficient time to hold a pre-deprivation hearing.  When Angersola gave the order to tear down the exterior walls, the fire continued to burn in the basement of the structure, those walls prevented the firefighters from effectively combating the fire, and the whereabouts of the plaintiff were unknown.  Additionally, a small fire had already traveled through the debris in the

11

yard to the property line, and Angersola was concerned that the fire could spread to neighboring properties.

The plaintiff has presented no evidence that could support a conclusion by a reasonable trier of fact that Angersola abused his discretion in ordering the exterior walls demolished.  The plaintiff attempts to create a genuine issue of material fact by arguing that: (1) the brush and debris on the property had been cleared away, (2) the fire lines were appropriately strung, (3) the fire had died down, and (4) the plaintiff's whereabouts were known at the time that Angersola gave the order to tear down the walls.  The plaintiff's arguments are contrary to the undisputed facts regarding points (1),(3) and (4).  As to point (2), the fact that the fire lines were appropriately strung is not material to the question of whether efforts to fight the fire in the basement were impeded by the exterior walls; it only means that once the exterior walls were torn down, the firefighters could then immediately proceed to fight the fire in the basement.  Therefore, the plaintiff's arguments do not create a genuine issue as to whether an emergency situation existed.

### b. Availability of Post-deprivation Remedies

The availability of mechanisms for appeal or post-deprivation remedies precludes a latter action for denial of

procedural due process.  See, e.g., Bradley v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988).  Where state law provides an adequate remedy, claims for loss of personal property are not cognizable under § 1983.  See Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 473 (S.D.N.Y. 1998).

The defendant asserts, correctly, that the plaintiff's opportunity to contest the propriety of Angersola's decision and seek monetary damages through a common law action in state court constitutes meaningful post-deprivation process. See, e.g., Jackson v. Burke, 256 F.3d 93 (2d Cir. 2001). Connecticut law provides common law causes of action which would provide the plaintiff with sufficient post-deprivation process for the loss of his property.  See, e.g., City of Bristol v. Tilcon Minerals, Inc., 284 Conn. 55, 83-84 (2007) (an inverse condemnation proceeding may be brought where a government actor has taken the plaintiff's property such that the plaintiff is excluded from his private use and possession of the property); Mystic Color Lab, Inc. v. Auctions Worldwide, LLC, 284 Conn. 408, 418 (2007) (a plaintiff may bring an action for common law conversion where the defendant engaged in the unauthorized assumption and exercise of the right of ownership over the plaintiff's property, to the exclusion of the plaintiff's rights); Barnett Motor Transp. Co. v. Cummins Diesel Engines, Inc.,

13

162 Conn. 59, 64-65 (1971) (a plaintiff may bring a claim for negligence relating to the loss of personal property).

Because there is no genuine issue of material fact as to whether an emergency situation existed and adequate post-deprivation remedies are available to the plaintiff, Angersola's motion for summary judgment on the plaintiff's procedural due process claim is being granted.

### 2. Substantive Due Process

For conduct to constitute a denial of substantive due process, it must be conduct which "can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience. . . and is so brutal and offensive that it does not comport with traditional ideas of fair play and decency . . . ." <u>Smith v. Half Hollow Hill Cent. Sch. Dist.</u>, 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotation marks omitted).

> Substantive due process is an outer limit on the legitimacy of governmental actions. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious. . . . Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.

<u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999). "Only a substantial infringement of state law prompted by personal animus, or a deliberate flouting of the

law that trammels significant personal or property rights, qualifies for relief under § 1983." Id.

As discussed above, it has been established that Angersola reasonably concluded that an emergency situation existed. Therefore, his actions cannot be deemed arbitrary or capricious such that the plaintiff's right to substantive due process was violated. Accordingly, Angersola's motion for summary judgment on the plaintiff's substantive due process claim is being granted.

**B. Claim Against the Town of East Haddam**

A municipality may be liable under § 1983 when an official policy, practice or custom causes a violation of the plaintiff's constitutional rights. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692 (1978). If there is no violation of the plaintiff's constitutional rights, the municipality cannot be held liable under § 1983. Because there was no violation of the plaintiff's right to procedural or substantive due process, the Town of East Haddam cannot be held liable. Therefore, the motion for summary judgment is being granted as to the claim against this defendant.

**IV. CONCLUSION**

For the reasons set forth above, defendants Town of East Haddam and Donald Angersola's motion for summary judgment (Doc. No. 35) is hereby GRANTED. The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 14th day of July, 2011 at Hartford, Connecticut.

>         /s/AWT
>     Alvin W. Thompson
> United States District Judge